Good morning. May it please the Court. My name is Edie Lerman. I'm an attorney for Appellant Byron Pickle, the claimant. Your Honors, the district court in this case improperly heard the government's motion to strike before ruling on the claimant's motion for stay. And the issues are pretty simple as far as I understand them. This was an issue, or our motion to stay was brought before the Court nearly a month before the government filed a motion to strike. In our opinion, it was an abuse of discretion for the Court to rule on the motion to strike prior to hearing our motion to stay. The ongoing prosecution of the forfeiture proceedings would have burdened the right of claimant against self-incrimination in the related investigation or case. Now, the government makes a big deal of that there was no ongoing investigation happening at the time, and that, in fact, there had been a ruling by the district attorney of some sort indicating that no claim was going to be filed or that there was no case going to be filed. But I think this is disingenuous, and there's an attempt to pull the wool over the Court's eyes. At any point in time, the district attorney could have decided that they did want to pursue a claim against this individual. And, in fact, there were other individuals being prosecuted for this very same garden that we're talking about in this case. Sotomayor, what did your motion to strike say? It said sort of general terms that I have a Fifth Amendment problem, and so they should have a stay? It wasn't our motion to strike. It was the motion to stay. I said to stay. Yes. I'm sorry. Yes. Yes. It was a short motion. I don't have it here, which is why I'm asking the question, but it didn't spin out what your Fifth Amendment issues were exactly. It indicated that the client had a right to have the stay and not need to answer the special interrogatories as well as interrogatory questions that were being asked of him. So it was specific with respect to the special interrogatories, this particular ones. Yes. It seemed quite benign given the fact that you'd already filed a verified claim, which essentially said the same thing, no? I understand that. And I've thought about it quite a bit. I've been in courts before where individuals have refused to identify themselves, and even prospective witnesses have refused to identify themselves because the mere identification of themselves could be grounds for incriminating themselves in other matters. And it gets to the heart of our right to not incriminate ourselves if we're being told, well, you have the right to not incriminate yourself, but we believe that these questions are benign. And in the ---- But you've already filed a claim. Mr. Pickle had already filed a claim in his name saying that he was the record owner of the property, and the government had already alleged that he was the record owner of the property. And he had already filed a claim saying he had an ownership interest in the property. Correct. So what is it that was going to come out in these interrogatories that was any different? Well, one of the things they're asking for ---- And that runs both ways. It means why is the government making a fuss over it? Because they already have the information. I think the fact that it's too part of the issue with respect to standing, that the government already had the issues that they needed or the information that they needed to say that there was some standing, but the questions weren't quite as benign as one would think. I mean, one of the questions was for him to identify every Social Security number that he had ever used, as well as every name that he had ever used. And so if there was further information under some other name, certainly he has a right not to have to reveal that information. There was also a scheduled deposition upon which questions were going to be asked, and the stay was requesting that to be continued as well. So I think that under the totality of the circumstances, while it might seem like giving that information is benign, the government already had some of that information and is basically using the fact that we are trying to say that there's a Fifth Amendment privilege here as the basis for saying, well, then there was no standing. And yes. Haven't there been three stays earlier or something? There had been numerous stays earlier. Why is it that this time there hadn't been another automatic one? Because everything had terminated? I'm not sure the answer to that question. I was wondering the same thing. I think that the request for the stay, we were told, was going to be heard, and this is part of what I think was the denial of due process. We filed the motion to stay, and it should have been heard prior to the motion to strike. But then the Court decides, no, we're not going to hear the motion to stay until we've heard the motion to strike, which is filed afterwards, and I think you guys know the rest. Or you don't. So, counsel, at this point, what remedy are you seeking? At this point, I think we're seeking that that motion to strike be vacated. Why? Because it was heard prematurely, and it resulted in a denial of due process. And the practical matter, what difference does it make at this point if the Court has already made the determination regarding whether or not your client had evidence of sufficient ownership to contest the forfeiture? Well, if the stay is granted, then the or, I'm sorry, if the motion to strike is vacated and the stay is brought before the Court where the Court is ordered to hear the merits of the stay and the right of the Fifth Amendment to basically allow for that stay, then once that stay is in effect, then the motion to strike wouldn't be allowed, because the motion to strike would then be stayed as well. But also, did the district court ever decide that your client didn't have standing as opposed to that he didn't answer the interlocutories and therefore didn't have standing? Well, it's a very good point that Your Honor brings up. I think that what my understanding of the Court's ruling was that because the client failed to answer the interrogatories, he then failed to provide adequate standing or proof of standing. In fact, they don't. So did he ever deal with the government's position that your client didn't have standing or that he hadn't answered the interrogatories and he should be, the claim should be struck because he wasn't essentially on a discovery, a sanctions question? It's my understanding that the government's position was that because my client failed to answer the interrogatories, he lacked standing, and therefore the motion to strike should be granted. But your client did not object to the interrogatory on the basis of the Fifth Amendment either. Under the stay, he did. When my client requested the stay. But when the interrogatories were propounded, there was no objection to those interrogatories on the basis of the Fifth Amendment. It was my understanding at the time that the stay would effectuate that, that because I believed the timeframe, our request for that stay was timely, that we would then, because the objection was so blatant with respect to why we were objecting to that, that the stay be granted, that because of that, those objections were obvious to the court. So if we would vacate the motion to strike on the grounds that it was an abuse of discretion, then it would go back and the judge would have to decide the motion to stay, and are you saying if the motion to stay then is denied, then your client answers the interrogatories? Correct. Even if they're okay. Yeah, and somewhat, I think that this is some, to be honest, I think this is somewhat of a cerebral exercise, and it's about the principle of the matter. In future cases where an individual who has standing in a case shouldn't have to respond to interrogatory questions when there is the potential for an ongoing criminal investigation, and then have the court be able to circumvent those rights by granting a motion to strike when the very standing issue that's created there is part of that process. If the government were in some formal way to agree that there wasn't going to be any prosecution, would everything change? At that time, if there had been such a formal agreement, I think that could change, yes. But it was beyond just a formal – there was no formal agreement as far as I understand. The district attorney's office, their decision was that at that time they weren't filing against this individual. So there was never a ruling from the district attorney or the state court showing that no potential criminal investigation or proceeding was going to occur. But you're sort of asking for the district attorney's office to forego ever prosecuting anyone. That can't be right. The district attorney should not have to forego prosecuting someone. It's not in order for the forfeiture to go forward. They don't have to. The state forfeiture proceedings all the time for criminal matters. I mean, for – I mean, it was stayed for a significant period of time. And then the district court was of the view that because there was a pending plea agreement that this case was probably – the criminal – all the criminal prosecutions that were going – that were likely had been done, why couldn't the district court take that route? Well, the district attorney could have taken the position and formally rejected the case with prejudice against the defendant, which they never did. But not required to. Right. They're not required to. But the law gives a statute of limitations of three years under State law for a prosecution of that sort. So basically – But the district court here never squarely addressed the Fifth Amendment claim. I didn't hear what you said. Your real problem here is that the district court never addressed the Fifth Amendment claim. He could have said, the reason I'm not granting you the stay is what Judge Rolandson is saying, that this can't go on forever. They say they're not going to prosecute me. You essentially don't have a Fifth Amendment claim. He could have said that. And the court never said that. That's not what happened. No. That's not what happened. The court went directly to the motion to strike and – You can't have standing on the stay unless you answer these interrogatories, which become circular. That's my problem with it. Exactly. Yeah. And I think that's exactly the issue I have. What are you saying – what was the error of law that the district court made that constitutes an abuse of discretion in this case? The procedural error would have been that the stay should have been heard prior to the motion to strike. Well, but that requires you, it seems to me, to have a prior error of law, which is that his ruling that you didn't have standing was – and therefore couldn't bring the motion to stay is wrong, right? Don't you have to establish that, i.e., that just because you didn't answer these interrogatories doesn't mean that you don't have standing in the forfeiture proceeding? I mean – You don't have standing because they had already alleged that you had an ownership interest and you had already alleged that you had an ownership interest? I think it can be argued that way. I argued it a little differently. Well, if you don't have standing, then why do you get to use – bring the stay motion in anywhere? The court never addressed the stay issue and said that we didn't have standing, so they couldn't grant the stay. But that brings me back to my question. What was the error of law that the district court made in deciding the motion to dismiss before deciding the stay order? The court didn't hear the motion to dismiss prior to issuing the stay order. The court issued the motion to bring. But what he said was the motion to stay is denied and the hearing is vacated because absent a claim to the defendant property, Pickle no longer has standing to contest this forfeiture action. If you don't take issue with the standing ruling, then I don't know where you are. I mean, people can't just walk into court and say, I want to stay. Correct. But the standing had never been an issue and wasn't ruled as an issue with respect to the stay. The standing – Well, I mean, he just did it in this proceeding, so that's what you have to be arguing about, i.e., we did have sufficient standing for that purpose. And the government conceded it. We are saying that we did have sufficient standing for purposes of the stay. I got confused a little when you started talking about the motion to dismiss.  Well, I'm just asking you, in order for us to resolve this case, in my view, we have to find that the district court committed a legal error. We can't just say we disagree with the way the district court proceeded in this case. It should have heard, one, the motion before the stay or the stay before the motion. I'm asking for a legal error in a case or a rule or something that tells me how the district court committed legal errors such that we can say that the case should be reversed. Well, one thing that I do argue is that I think even if the court was leaning towards ordering the stay, I'm sorry, even if the court was leaning towards ordering or granting the motion to strike, that it seems a terribly too severe ruling to make in that circumstance. So what the court ---- As a matter of law, though? Well, yes, as a matter of law, to the extent that the law doesn't require that that ruling be made. But does it preclude the court from making the ruling? I think it precludes the court from making due process rulings that deny individuals their right to Fifth Amendment privilege. Okay. So your ---- I thought your argument was that the district court was required to address the stay motion before ruling on the motion to strike. That's what I thought your argument was in your brief. Well, my argument is that the district court improperly heard the government's motion to strike before ruling on the claimant's motion for a stay. That's what I said. So that's why I'm asking you, why was that legal error? I still don't have an answer to my question as to what ---- why was ---- give me a case that says or a rule or something that says that was legal error for the court to do that. That's where I'm stuck. Why don't I ---- I only have 30 seconds left, so I'll think about that and then I will ---- Well, you have time to answer my question, though. Okay. Give me a case, just give me a case, a rule, a statute, or something that says this was legal error. Not your argument, but ---- Why don't I use my time during his speech to try and find that for you? I have a question which you can also answer without running out of your time. Okay. Just curiosity's sake, all of this happened in 2011. We're here three years later. Why is that? Why what? Why are we here three years later in this appeal? What happened here? Did things happen in the meanwhile, whether stays or something? Not that I know of. No, I don't know. I ---- That's why I asked the question, what is the remedy you're seeking here? But I think that, to be honest with the court, the remedy that I'm seeking is that in the future, I'm not put in a situation where a person is not put in a similar situation where they are required to answer questions and basically use ---- I have a question. Has this property been taken by the government now? What's the status of the situation? I tried to figure out the status of the property, and I haven't been able to talk with the individual to figure out what's going on. I think the property may have even gotten sold potentially at a tax auction. I'm not clear. Then the whole thing would be moved. It's ---- I don't know for sure that that's the situation I was trying to figure out, the status of the property. What's that? Wouldn't you just call your client, Mr. Pinnacle? He's a little difficult to get a hold of. Well, I'm trying. Well, I will ask the same question to the government, but I think we would like some submissions about whether we are dealing with an actual live forfeiture. To me, it's the principle of the matter that ---- Well, I understand that. The courts don't sit on principles. We sit on cases. And the question is, what's the case that's left now at this point? Okay. Thank you. Do you happen to know the answer to the last question, what's the status of this property? May it please the Court, my name is Kevin Kosivian. I'm here on behalf of the United States. I do have sort of a response. It's not in the record, but I will continue and sort of provide some background. I believe there are some significant county and different type of city or liens against the property based on maintaining it, and those are quite significant. And I think they've either tried to initiate sort of foreclosure proceedings to recoup those tax debts, but it hasn't been finalized. That's my understanding of it. Counsel can call her client if she's ---- if he's available and provide the Court a more appropriate response. But I did want to sharpen a little bit about the response about what sort of happened ---- what was going on in this case and why it was stayed for 17 months before. Now, this case was filed in 2009, and then we did stay the case for 17 months by way of four separate joint stipulations. And the first of those stipulations said that there was an ongoing criminal proceeding against Pickle and his relatives. And the last three of those stipulations said that the ---- that Pickle was unlikely to face criminal prosecution, and that the stay was actually requested because of the other fact witnesses, and that the State agents would be exposed to, you know, depositions and that whatnot before the State prosecution had finalized. Now, instead of filing a fifth stipulation to stay the case, the parties entered into a joint scheduling report that we filed with the Court that laid out how we were going to conduct discovery, what we were going to ---- what topics we were going to cover. It included that we were going to depose the claimant based on his claim, and even the claimant himself said he was going to depose the Federal government and the State agents. There was no mention of an additional stay, nothing from Pickle that said, I have concerns about this case going forward, based on anything that was going on in the case. After the Court entered its scheduling order, the government issued the special inauguratories, general inauguratories, and other discovery to find more about what was going on in this case. Ginsburg. What did you need to find out that you didn't actually know? Well, we knew he was the recorded owner, and the recorded owner lived there. He lived there at the time. But in the previous year, he had been arrested two times in different parts of the country. One arrest was in 2008 for ---- in Roseville, California, which is outside Sacramento, you know, many, many hours from Trinity County. And the other arrest was in Washington, which is, you know, north of Sacramento and Trinity County. But do you have any ---- from what you did know, he had standing to file a claim, no? From what we did know, yes. He ---- You alleged it, and he ---- and in your complaint, and he alleged it in his claim. So what does the district judge mean by saying that he has an established standing? Well, I'll clarify my answer. Article III standing. He did ---- he pleaded that he was the recorded owner, and that bar is very low. You pleaded that he was the recorded owner. Well, yes, that's ---- that's exactly correct. We knew he was the recorded owner. And that's not good enough to have standing to make a claim? I think in this case, it falls short of the additional hurdles of Rule G-5 and the procedure rules in this case. Later on, when he filed an answer, he changed it and said he's an ownership and or possessory interest. And this Court has held in the $133,420 case that that's vague. But in his claim, he said he had an ownership interest. He said he was a recorded owner, and then later in his answer, he said, I have an and or ownership possessory interest. And this Court has held that that is too vague to be a response. But he said he was the recorded owner. There's the ---- I agree. There's no dispute that he was the recorded owner. All right. Is it any dispute that if he was the recorded owner, he had standing? He has Article III standing. And standing under the statute? Standing under ---- he doesn't ---- the procedural rules require additional standing in in-rem cases. Where? Rule G-5 and Rule G-6. Well, G-6 says what the interrogatory answers are, and G-5 says he has to have standing. But I don't know where it says there's anything additional. I mean, that ---- there's an assumption being made that if you don't answer the G-6 interrogatory, you don't have standing. I don't think that's what the statute says. I don't think that's what the case law says. I think it's a ---- it's ineptly worded as a statutory standing. It's a procedural rule. Where? I don't see where that is. Read it to me. It's in Rule G-5 and Rule G-6. G-5, I understand. G-6 is not written that way. It's just an interrogatory. And I understand it to be that if you don't otherwise have the information, you can get the information, but they otherwise have the information. We cited the cases, the Mack truck case and the other cases, saying even the claim or the, you know, Pickle's own responses say when the rule used to be ruled C-6 before they were reformatted, it included the G-5 and G-6 now. And that was sort of the statutory standing idea. No. G-6 is about special interrogatories. It doesn't have anything to do with standing. Correct. It's a procedural rule that ---- Correct. So just not answering those interrogatories does not mean you lose standing. And that's what the district court seemed to think. It's a wording that I think has been formulated that's called statutory standing based on procedure rules. Your Honor is right. It's more of a discovery sanction. And even the note ---- But that was a pretty harsh discovery sanction, then. Well, I think that goes into the context of this case. I mean, we had issued those special interrogatories, and we wanted to find out, okay, he was arrested in other places. This is a drug conspiracy case. We didn't know if the recorded owner meant just a straw person. And the other question was he was in default, and he wasn't paying his bills. It was like he had been ---- he was just a recorded owner. Hey, they may have put my name on here, and I'm no longer involved. But he filed a motion to stay. So why shouldn't the district court have had to decide, say, nope, I'm going to deny your motion to stay. So now, assuming that, you know, anyway, it's a requirement. So you're going to have to answer these interrogatories. If you don't, I may consider dismissing it. As a sanction, but not for lack of standing. Right. It's worded in the cases as a lack of statutory standing. And I agree it may be inadequately worded, but it basically is a discovery sanction. There has been, I mean, there's been no Ninth Circuit law on that case, on that issue yet. And how can that be? I mean, G-5 says filing a claim, a person who asserts an interest may contest the forfeiture by filing a claim. The claim must identify the specific property claim. The claim did that, right? Correct. Identify the claim and state the claimant's interest in the property. The claim did that. Correct.  Be signed by the claimant on a penalty of perjury, right? Did that. Correct. All right. It was served on the government attorney, right? Yes. All right. He met G-5. Do you contest that he met G-5? He we contest that he met G-5 later on after the stay because of the answer. The answer had the and, or in it, and it made the whole thing vague. It made us question everything. But he had already filed a verified claim that said that, that met the G-5. What's the difference? What's in the answer? Stay. I mean, the standing firms, as the proceedings go along, when we had actually gotten the litigation and he had filed an answer and relied on that when we were, you know, when we were going to litigate, it muddied everything up. And so we issued these special auditories. I'm not interested that you were contesting his G-5 compliance. I thought you were contesting only his G-6 compliance. The Court is correct. We're not contesting his G-5. This is a question about special inauguratories that we served that were very basic. G-6 is just a discovery provision. It's a question. It's an in-rem proceedings. It allows the government to ask very specific questions, narrowly questions. If you don't answer them, then you might have a discovery sanction. But what does that have to do with standing? If you don't answer them, it's a noncompliance with the procedural rules. And in this case, and as the rules point out, it allows the Court to strike the claim of the person asserting an interest. And in this case, who --? 133,000 says that, once you get to the motion-to-dismiss stage, if the claimant has only asserted a possessory interest at that point, then additional evidence has to be brought fort. So we're at a different point at the motion-to-dismiss stage than we are at the pleading stage. That's addressed in G-5. Correct. I mean, I would think the 133,000 case sort of cemented what was required at different stages of the proceeding, the motion-to-dismiss and then the motion for summary judgment. Our motion-to-strike was based on these, you know, fairly basic interrogatories that we just wanted to firm up exactly what we were doing within this interim case. But isn't that just to emphasize why the judge needed to rule on the motion to stay first, and then if the judge denied it, then give him the chance to answer the interrogatory? Well, a little bit about the motion to stay. I mean, they say it was a response to the interrogatories, but it didn't even mention the interrogatories. The rules make clear that under rule, you know, Supplemental Rule 6, Civil Rule 33, I mean, it explains how to answer or object under oath, and if you have an objection, you specify it. And if it's a Fifth Amendment objection, I mean, we have Davis, we have Neff, we have the cases that expressly say how to respond if you have a Fifth Amendment objection. You know, in the Davis case, I would argue that these innocuous interrogatories, they weren't even, they didn't rise to the level of, you know, any potential burden. Well, for that very reason, shouldn't he at least have given a chance to answer it once he decided that he wasn't going to grant the stay? And he was. We had issued the interrogatories. He blew, you know, the deadline lapsed, and he did not respond. And he didn't extend it. And we gave him an extension of time. And the Court, before it issued this essentially Droskodian sanction of dismissing the claim, did not give him a chance, another chance to answer. Was he required to? He was not required to. And after the first extension, and that extension lapsed, this, you know, after that additional 30 days, that extension had lapsed again. We filed the motion. They did not file a timely opposition. And in their untimely opposition, which the Court did consider, they did not request, you know, an additional time to answer the interrogatories. And then they changed it. At least, correct me, then. My understanding was the time had lapsed, but then there was an agreed extension. And it was during that extension that he filed a motion to stay. That's correct, Your Honor. We had agreed to extend the time. And then during that pendency in time, the claimant or Mr. Pickle filed that motion to stay. But the motion to stay did not – I mean, it did not mention the special interrogatories. It mentioned a few of the requests for admission and a few of the general interrogatories, nothing more. What about the advisory committee notes, admonition, that claims should be stricken under only if they're satisfied that the claimant should not be afforded an opportunity to cure? I think the Court is noticing the third sentence of that rule, that not every failure to respond to the special interrogatories warrants an order-striking claim, but some do. And in this case, I think that that's right. I mean, we gave an extension of time. And it has to – the whole case has to be viewed in context of what was going on. I mean, we had stayed the case for, you know, almost two years, and then we lifted – we agreed that, you know, we were going to have a litigation schedule, that we were going to proceed this way. The case had been closed against them. We filed from, you know, an officer of the court. This investigation is closed. And then, you know, as well as the investigatory team, this is closed. Ginsburg. But what strikes me is you have a set of reasons that the judge might have granted the motion to strike, but those weren't the reasons that the judge gave. I mean, the judge's reason was essentially that he wasn't going to hear the motion to strike because they didn't have standing. And that's not right, is it? Well, I think I can help the Court along a little bit. The time that the Court continued the motion, and what should be sort of sharpened in this way, they had a motion to dismiss and a motion to stay. They first filed a motion to dismiss, motion to quash, motion to suppress, with it – as the Court knows, Rule G-6 and Rule G-8 require them to respond to the special interrogatories before getting the motion to dismiss. So they had those two – the motion to dismiss pending, and then they got the extension to respond to the special interrogatories, and then they filed the motion to stay. Now, under the rules, what Pickle is basically saying is, hey, the motion to stay is a response to the special interrogatories, which sharpens standing. And so I get to then bring my motion to dismiss. So it's kind of hard to understand, as the motion to stay is an answer to special interrogatories, to allow them to bring a motion to dismiss. So then they had these two motions in front of the Court without sharpening standing in in rem cases where the claimant is not the defendant, the property is. So, you know, to the Court's point, a little bit about the sort of motion to stay, they concede that on the third page, there is no Federal investigation. This is strictly a State investigation that had been closed for a long time. And I think that's important as well. If the Court doesn't have any more questions, I will submit. I have one question. Okay. Does your – to what degree does your position turn on the – this ANTOR provision in the answer? In other words, suppose they hadn't done that. Suppose they had repeated in their answer what they said in the claim. Would that mean that there was no basis for dismissing them for lack of standing and the district judge shouldn't have granted the motion to stay? It hinders very little. It is actually sort of focused on the motion to stay, because under 981g2, they fail those factors. You know, Pickle cannot satisfy them. The first one is the active related criminal investigation. There was nothing active. And the second is that, you know, he had standing. And that was sort of the issue that the Court talked about, was, okay, look, he hasn't responded to these special inrogatories. And the Rule G-5 may be enough, but when we sort of briefed it in their 981g2, we just wanted to make clear that when he raised the Rule G-5 issue, that we had this issue out there about ANTOR. And it was a case that was intervening from when our Court decided, from district court. So it was out there, and we didn't want to concede it, because it was sort of an opposite to what he put in his claim. Kagan, are you claiming that he really didn't have a Fifth Amendment issue out there just because the State, you know, had closed whatever they were doing? No. I'm not saying he had a Fifth Amendment issue, but that's different than the 981g2. 981g2 requires the active related criminal investigation. And the third factor, Subset C, allowed him to burden his, you know, in one of these active criminal investigations. And there wasn't one. So are you saying he didn't satisfy standing because he hadn't answered the inrogatories, even though you concede otherwise that he had standing? I think that the he we don't we concede that he pleaded Article III standing. And he got that far. We did not file a motion on Rule G-5. Our motion was strictly based on Rule G-6 and the special inrogatories and the noncompliance with those procedural rules. It was limited to that after the extension, after we gave him additional time. But the district court, see, that's where I'm having a problem, because the district court didn't at least articulate his order as being a sanction for failure to comply with discovery. He articulated, and as you know, the case law sometimes talks of a failure to answer the G-6 interrogatories as being a lack of standing. But that doesn't seem right. It seems like there's an independent inquiry. If you don't that whether there's enough in the record without the answers to the G-6 interrogatories to establish standing, and the district court never did that. Is that right? What the district court did is that it applied those supplemental rules. And in Rule G-8, it says if you do not answer the interrogatories, your claim may be subject to stricter. Essentially, as a sanction. As a sanction. But he didn't say that's what he was doing. I think that the what they tied on to were the sort of that language where it says the statutory standing. And if you look back to the cases before the rules were changed in 2005 in C-6, it does reference those as statutory standing. And it you're correct. There hasn't been a Ninth Circuit case. In the Seventh Circuit, well, that was a totally different case that they mentioned the interrogatories. That was a possessory case with cash and things like that. But just in terms of whether statutory standing is any such thing. Well, I think they doubted. I think Judge Posner said it was a, you know, an unfortunate word. That it was used, statutory standing, for a procedural rules violation. But it was, you know, it's still in noncompliance with the rules. After several additional chances and not even asking the courts to allow them to respond. The first time the Court heard of it was in a motion for reconsideration five months after the interrogatories were issued. They were very basic, and they would allow us to firm up why the person was in the case, that he was not a straw owner, and then we could litigate the motion to dismiss him, whatever it was. Ginsburg. What's your position on whether or not Pickle demonstrated the standing required by G-2? We did not challenge that at the court below, and you don't challenge it now? No. I'm over time. And the District Court said, well, it's not clear. All right. Thank you. I apologize for going over, Your Honors. No, no. You've been very helpful. Thank you very much. We'll give you one minute to rebuttal. Thank you. Judge Rawlinson, I'll do my best to respond to the question that you had asked. I think the heart of the error that occurred in this case is that the Court erroneously believed that they had to rule on the Rule G motion prior to. Why was that error, though? That's the question. If the Court refers to United States v. Currency $267,961.07, which I talk about in my opening brief on page 16, they talk about, in that case, that the or as it would relate here, that Mr. Pickle did affirm in his verified claim that he was the owner of the property, in that he would have a legally cognizable interest in that property. In Rule G specifically, it states that you do need to prioritize motions to dismiss prior to a motion to strike or, I'm sorry, after a motion to strike, and we don't disagree with that. There was never a motion to dismiss that, was there? We did file a motion to dismiss, and we did stipulate that this was the motion to stay. Correct. There wasn't a motion to dismiss. The motion to dismiss was not in play. Right. It was the motion to stay versus the motion to strike. Yes. And that's why I'm saying was the error, was it didn't have to hear a motion to stay after the motion to strike. In fact, it could have heard and should have heard timely our motion to stay. That would have dealt with the standing issue. If the court at that time had ruled, yes, in fact, we grant the government's right to propound those interrogatories, we don't believe that that Fifth Amendment should cover those, then the proper thing would have been to do a sanction less severe than dismissing the entire action. I understand your argument, but I don't think the statute reads that way. That's the problem I'm having with the argument, that the statute doesn't say that as between a motion to stay and a motion to strike, the motion to stay has to be heard before the motion to strike. No, but the court ruled, at least my interpretation of that, the court's ruling was that the motion to strike, because of Rule G, has to be heard before the motion to stay, and that was incorrect. It doesn't say that. It says the motion to dismiss has to be heard before the motion to strike. But it doesn't say the motion to stay has to. And that's our position, is that it, in fact, shouldn't have happened in that way. So are there any other questions? Thank you both for your argument. Okay. Thank you very much. The case of United States v. Pickle is submitted. We'll go on to Fresno Madero Federal Land Bank v. Margosian. Thank you.
judges: Bucklo, Berzon, Rawlinson